Dorothy L. COLE, et al., Plaintiffs,

v.

SCHENLEY INDUSTRIES, INC., et al., Defendants.

Nos. 71 Civ. 1028, 71 Civ. 1042, 71 Civ. 1284, 71 Civ. 1536, and 71 Civ. 2605.

United States District Court,
S. D. New York.

May 25, 1973.

---

82

Herman Odell, New York City, Lead Counsel for plaintiffs.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant Glen Alden Corp.

Simpson, Thacher & Bartlett, New York City, for certain individual defendants.

Rubin, Wachtel, Baum & Levin, New York City, for defendants Rapid-American Corp. and Riklis.

Milton B. Seasonwein, New York City, for defendant Schenley Industries, Inc.

Charles Trynin, New York City, for Harry W. Voege and Anna May Tunmore, as Trustees.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs move for class action determination pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure.

This action is a consolidation of five separate cases attacking the merger of Schenley Industries, Inc. ("Schenley") and Glen Alden Corporation ("Glen Alden"), announced on February 25, 1971 and effectuated on June 17, 1971. In substance, the complaint alleges that the merger terms were unfair to the minority shareholders of Schenley. This claim is based upon allegations that the Schenley proxy statement of May 21, 1971 and defendants' course of conduct between September 1968 and June 1971 involved violations of sections 10(b) and 14(a) of the Securities Exchange Act of 1934.[1] It is alleged that Glen Alden intentionally depressed the market value of Schenley from the time of Glen Alden's purchase of an 86% interest in Schenley in 1968 until the 1971 merger announcement. A reduced conversion rate for the minority shareholders of Schenley is said to have resulted from this alleged conduct by defendants.

Glen Alden's control of Schenley is alleged to have been accomplished in three steps: (1) on March 20, 1968, Glen Alden purchased approximately 1,400,000 shares of Schenley common stock from Lewis S. Rosenstiel, the then Chairman of the Schenley Board, and six other persons; (2) on April 26, 1968, Glen Alden purchased 110,000 shares of Schenley common stock on the market at an average price of $53.20 per share; and (3) in August 1968 Glen Alden acquired over 5,000,000 shares of Schenley common by tender offer for cash and Glen Alden debt securities. These transactions resulted in its acquiring 86% of the outstanding Schenley common, carrying with it control of the conduct and affairs of Schenley.

## CLASS ACTION DETERMINATION

The present motion by plaintiffs based upon their consolidated amended complaint proposes that the action be maintained on behalf of four classes, which the complaint defines essentially as follows:

1. Owners (other than defendants) of Schenley shares on June 17, 1971, the effective date of the merger ("Class I");[2]

2. Owners (other than defendants) of Schenley shares as of February 24, 1971 (the day preceding the public announcement of the merger plan) who between February 25, 1971 and June 17, 1971 sold such shares through the facilities of the New York Stock Exchange prior to the merger date ("Class II");[3]

3. Members of Class I who acquired their shares on or before September 1, 1968, the expiration date of the Glen Alden tender offer set forth in a prospectus dated August 8, 1968 ("Class IA");[4]

4. Members of Class II who acquired their shares on or before September 1, 1968 ("Class IIA").[5]

Classes IA and IIA (sought to be represented by plaintiffs Voege and Tun-

---

1. 15 U.S.C. §§ 78j(b) and 78n(a).

2. This class is denominated "Class I" in the complaint (¶ 1(c)(ii)(aa)).

3. This class is denominated "Class II" in the complaint (¶ 1(c)(ii)(b)).

4. This class is denominated "Class III" in the complaint (¶ 1(c)(ii)(c)).

5. This class is denominated "Class IV" in the complaint (¶ 1(c)(ii)(d)).

more, who are also named among the representatives of Class I) are alleged to be third-party beneficiaries of a March 1968 agreement between Glen Alden and Lewis S. Rosenstiel, pursuant to which Glen Alden acquired Rosenstiel's substantial block of Schenley common stock at approximately $53.33, which was approximately twice that which was thereafter established for the 1971 merger. Voege and Tunmore claim in substance that they and an unspecified number of others who purchased Schenley common prior to September 1, 1968 were entitled upon the 1971 merger to receive the 1968 price thus obtained by Rosenstiel for his Schenley shares.[6]

■ Proposed Classes IA and IIA amount to subclasses of proposed Classes I and II: every member of Class IA is also a member of Class I; every member of Class IIA is also a member of Class II. There is no apparent need for these proposed subclasses. The existence of a theory of recovery (viz., the third-party beneficiary claim interposed by Voege and Tunmore) peculiar to the proposed subclasses is not sufficient, standing alone, to require separate class treatment.[7] Nor has any other persuasive reason for such treatment been advanced by any party. Moreover, Voege and Tunmore have not shown that their proposed subclasses are "so numerous that joinder of all members is impracticable."[8] Accordingly, the proposed subclasses will not be allowed at this time.[9]

■ As presently drawn, Class I would consist of all minority holders of Schenley on the effective date of the merger. That class would include a substantial number of persons who did not purchase their shares until *after* the public announcement of the merger plan on February 25, 1971. In contrast, the present plaintiffs bought in the period preceding the merger announcement, commenced the present litigation—in an effort to bar the merger—immediately on the heels of that announcement and (see Class II above) were sellers, not buyers in the post-announcement period.[10] In the circumstances plaintiffs may not represent those who bought Schenley stock on or after February 25, 1971.[11]

The overbreadth of Class I as defined by plaintiffs does not, however, require dismissal of the class allegations with

6. Judge Lasker, in denying a preliminary injunction sought by Voege and Tunmore, noted that Glen Alden in fact offered in August 1968 to acquire the Schenley common shares held by Voege and Tunmore and their proposed classes at a price substantially equivalent to that paid for Rosenstiel's shares. However, Voege and Tunmore and those they seek to represent elected to decline that offer. Voege v. Smith, 329 F.Supp. 180, 184 (S.D.N.Y.1971).

7. *Cf.* Northern Natural Gas Co. v. Grounds, 292 F.Supp. 619, 634 (D.Kan.1968), aff'd in part and rev'd in part on other grounds, 441 F.2d 704 (10th Cir.), cert. denied, 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267 (1971).

8. Fed.R.Civ.P. 23(a)(1). *See, e. g.,* De-Marco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968); Deyle v. Davis, 16 F.R.Serv. 2d 862 (D.Vt.1972) (Waterman, J.).

9. Voege and Tunmore (together with other plaintiffs) remain as representatives of Class I. Should they hereafter establish the requisite numerosity of the alleged third-party beneficiaries of the Rosenstiel-Glen Alden agreement and further establish that the interests of that group are not being adequately protected, they may reapply to the Court for subclass designation.

10. None of the presently named plaintiffs was actually a seller during this period—all of them having held their shares until the effective date of the merger. However, intervenor Ben Grais was such a seller and, since his application to intervene is hereinafter to be granted, he is treated here as a plaintiff.

11. Fed.R.Civ.P. 23(a)(3), (4). *Cf. e. g.,* Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A., 55 F.R.D. 26, 28–29 (S.D.N.Y.1972); Lesch v. Chicago & E. Ill. R.R., 279 F.Supp. 908, 911 (N.D. Ill.1968).

respect to that class.[12] Rather, Class I will be deemed to be limited (as is Class II) to holders of Schenley as of February 24, 1971—the only difference between Classes I and II being that the members of Class II continued to hold their shares until the effective date of the merger while the members of Class I elected to sell their shares prior to that date.[13]

■ Defendants argue that Class I, even as above limited, continues to be too broad insofar as it fails to exclude those Schenley shareholders who have demanded appraisal of their shares pursuant to the Delaware corporation statute. The argument is to the effect that where, as here, a majority shareholder *itself* possesses sufficient voting power to effectuate a merger, the only minority holder with a potential federal claim is one who has been misled into foregoing his appraisal right. The gist of defendants' argument thus is that no claim upon which relief can be granted has been stated as to those members of Class I who have demanded appraisal and who thus have undeniably not been misled into waiving their appraisal rights.[14] Such an attack on the merits of plaintiffs' claim is out of order on a motion for class action determination.[15]

■ Equally lacking in substance is defendants' further argument that this action may not be prosecuted as a class action until plaintiffs have shown that there is a substantial possibility of their prevailing on the merits. That this Court, in Voege v. Smith,[16] and the Delaware Court of Chancery, in David J. Greene & Co. v. Schenley Industries, Inc.,[17] denied applications for preliminary injunctions against the Schenley-Glen Alden merger does not render any less controlling here the recent and definitive pronouncement of the Second Circuit in Eisen v. Carlisle & Jacquelin

12. *See* Dolgow v. Anderson, 43 F.R.D. 472, 492 (E.D.N.Y.1968).

13. This difference does not appear to require separate classes. Certainly there is no antagonism or conflict of interest between Classes I and II such as would preclude common representation. However, no apparent harm is done by separating Classes I and II and plaintiffs need not under the circumstances amend their complaint to allege a single class.

14. In support of their argument that no claim has been stated as to those who demanded appraisal, defendants rely principally upon Rosenblatt v. Northwest Airlines, Inc., 435 F.2d 1121 (2d Cir. 1970), and Swanson v. American Consumer Indus., Inc., 415 F.2d 1326 (7th Cir. 1969). While, as defendants note, *Rosenblatt* specifically discusses the situation of the minority holder who loses his appraisal right by virtue of a misleading proxy statement, *see* 435 F.2d at 1124, the Court does not appear to have held that the minority holder who does demand appraisal can have no federal claim. See particularly 435 F.2d at 1124 n. 3. And the *Swanson* court's citation of and quotation from Laurenzano v. Einbender, 264 F.Supp. 356 (E.D.N.Y.1966), appears to be a rejection of

defendants' argument. *See* 415 F.2d at 1332 & n. 6.

Further, it would be anomalous if the existence of a claim under the Securities Exchange Act could be made to depend on the absence of or lack of resort to a state appraisal remedy. *See* 15 U.S.C. §§ 78aa, 78bb(a) ; *see also* J. I. Case Co. v. Borak, 377 U.S. 426, 433–435, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) ; *Swanson, supra,* 415 F.2d at 1333 ; Voege v. American Sumatra Tobacco Corp., 241 F.Supp. 369, 375 (D.Del.1965) ; Eagle v. Horvath, 241 F.Supp. 341, 344–345 (S.D.N.Y. 1965). Nor can it be said on this record that those who have demanded appraisal have made a binding election of remedies precluding prosecution of the present action on their behalf.

15. *E.g.,* Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir., 1973) ("Eisen III") ; Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427–430 & nn. 4–5 (5th Cir. 1971) ; Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970) ; Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A., 55 F.R.D. 26, 28 & n. 1 (S.D.N.Y.1972).

16. 329 F.Supp. 180 (S.D.N.Y.1971).

17. 281 A.2d 30 (Del.Ch.1971).

*(Eisen III),*[18] barring inquiry into the merits upon a motion for class action determination.[19] The above issues having been resolved, it is clear that the present action is maintainable as a class action on behalf of Classes I and II.

Class I comprises an aggregate of about 16,000 persons; Class II comprises an estimated 4800 persons. Impracticability of joinder is obvious.[20] The members of these two classes can be readily identified from Schenley's stock transfer records and are not so large as to be unmanageable.[21]

At the core of the wrongs alleged on behalf of each of the classes is the claimed scheme, said to have been carried out over a three-year period culminating with the alleged false and misleading proxy statement, to depress the market in Schenley shares by concealing Schenley's true financial condition, in order to enable Glen Alden to acquire the minority interest in Schenley for an inadequate consideration. There can be no doubt that the requirements of Rule 23(a)(2)–(3) are met as to both of the classes.[22]

Similarly, with Class I redefined to eliminate post-announcement purchasers, the Court is assured that the plaintiff representatives share common interests with their classes. Nor is there any reason to suppose that plaintiffs and their counsel will not vigorously prosecute this action. Accordingly, the requirement of adequacy of representation[23] is also met.[24]

The Court is also satisfied that common questions prevail over individual questions and that a class action is superior to other methods for adjudication of the controversy.[25]

## COSTS OF NOTICE

Plaintiffs request that the Court hold an evidentiary hearing directed to the allocation of the costs of notice to class members under Rule 23(c)(2), urging that such a hearing would demonstrate the apparent merit of plaintiffs' claims and that such a demonstration would justify imposition of the costs of notice entirely or substantially on defendants. *Eisen III* requires rejection of plaintiffs' argument in this respect.[26] Plaintiffs must bear the costs

18. 479 F.2d 1005 (2d Cir. 1973).

19. *Accord, e.g.,* Miller v. Mackey Int'l, Inc., 452 F.2d 424 (5th Cir. 1971); Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A., 55 F.R.D. 26 (S.D.N.Y.1972).

20. Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

21. Berland v. Mack, 48 F.R.D. 121, 127 (S.D.N.Y.1969).

22. *E.g.,* Green v. Wolf Corp., 406 F.2d 291, 299–300 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Weiss v. Tenney Corp., 47 F.R.D. 283, 293 (S.D.N.Y. 1969); Dolgow v. Anderson, 43 F.R.D. 472, 488–489 (E.D.N.Y.1968); 3B J. Moore, Federal Practice ¶ 23.06–2, at 325–326 (2d ed. 1969).

23. Fed.R.Civ.P. 23(a)(4).

24. *E. g.,* Feder v. Harrington, 52 F.R.D. 178, 183 (S.D.N.Y.1970); Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y. 1968).

25. Fed.R.Civ.P. 23(b)(3). *See, e.g.,* Green v. Wolf Corp., 406 F.2d 291, 300–301 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); In re Cohen's Will, 51 F.R.D. 167, 174 (S.D.N.Y.1970).

26. While footnote 5 of the *Eisen III* opinion indicates that the general rule imposing costs of notice on class plaintiffs may not be absolute, see *Eisen III* (479 F.2d 1005), nothing in the circumstances of this case warrants deviation from that general rule. Indeed, plaintiffs would be required to bear the costs here even under the balancing approach of Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969). Thus: (1) previous denials of preliminary injunctions leave the merit of plaintiffs' claims open to considerable doubt; (2) the costs of notice here will be but a minute portion of the recovery

of notice for the present, subject to their ultimate taxation in accordance with such orders as may be entered upon final disposition of the action.[27]

## MOTIONS FOR INTERVENTION

 ▪Intervenor Ben Grais acquired Schenley stock in the period prior to the announcement of the Schenley-Glen Alden merger and sold his shares during the interval between that announcement and the effective date of the merger. Mr. Grais moves to intervene as a representative of Class II and has, in a complaint in intervention, adopted all the pertinent allegations of the main complaint. As has previously been noted, none of the presently named plaintiffs was actually a seller in the post-announcement period. Thus, absent amendment of the complaint to merge Classes I and II into a single class, intervention by Mr. Grais or another post-announcement seller is essential to the maintenance of this action on behalf of such sellers: only *members* of a class may maintain a class action.[28] Mr. Grais' motion is granted.[29]

▪ Intervenors Walter and Mary Hughes bought Schenley stock in 1969 and continued to hold it through the effective date of the merger. The Hughes, unlike any of the presently named plaintiffs, demanded appraisal of their shares pursuant to the Delaware corporation statute. They move to intervene as additional representatives of Class I. Defendants do not oppose this motion as such. Rather, defendants have argued only that no shareholder who demanded appraisal may properly be included in Class I (on the premise that no such person can have any federal claim). Defendants' argument in this respect having been rejected, the motion of Mr. and Mrs. Hughes to intervene is granted.[30]

Settle order on notice.

---

plaintiffs seek; (3) plaintiffs' counsel indicated upon the argument of this motion that imposition of costs of notice on plaintiffs would not compel termination of the action; (4) defendants' vigorous opposition to having this case determined a class action evidences a lack of desire on defendants' part for the *res judicata* effects which notice will achieve. *See generally* Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 568, 570 (2d Cir. 1968).

27. *See* Berland v. Mack, 48 F.R.D. 121, 133 (S.D.N.Y.1969).

28. Fed.R.Civ.P. 23(a). *See, e. g.,* Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A., 55 F.R.D. 26, 28 & n. 4 (S.D.N.Y.1972).

29. *See, e. g.,* McCausland v. Shareholders Management Co., 52 F.R.D. 521, 522–523 (S.D.N.Y.1971); Gaddis v. Wyman, 304 F.Supp. 713, 716 (S.D.N.Y.1969).

30. No separate subclass for those who demanded appraisal was sought in connection with the present motion. If in the future a separate subclass is deemed appropriate by any party, application may be made to the Court therefor. The Class I alleged in the complaint in intervention will of course be deemed to be limited to holders of Schenley stock as of February 24, 1971 in accordance with the disposition herein made as to Class I of the main complaint.